# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 24-m-702
A black Apple iPhone seized from the person of Dwight L. Farmer on )
December 4, 2024, currently in the custody of the Lake Winnebago )
Metropolitan Enforcement Group (LWAM) in Neenah, WI. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(c); 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) | Felon in Possession of a Firearm<br>Possession of a Firearm in Furtherance of Drug Trafficking Crime<br>Possession with Intent to Distribute Cocaine |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**BRADLEY KURTZWEIL** Digitally signed by BRADLEY KURTZWEIL
Date: 2024.12.05 15:18:43 -06'00'

*Applicant's signature*

Bradley Kurtzweil, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: 12/5/2024

*Judge's signature*

City and state: Green Bay, Wisconsin        Honorable James R. Sickel, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Bradley Kurtzweil, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of property, a cellular telephone, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since March 2020. My duties with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3. I completed approximately 26 weeks of training (approximately 1000 hours) at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches, arrests, interviews, surveillance, and evidence collection.

4. During my time at ATF, I have attended specialized training from the ATF related to the determining the interstate NEXUS of firearms and ammunitions. I regularly perform physical examinations of firearms for various purposes, including a determination of interstate/foreign commerce nexus and appropriate classification under the Gun Control Act of 1968. Additionally, I frequently conduct research by referencing industry-related public reference materials widely utilized by law enforcement and civilian firearms experts,

1

manufacturer's websites, law enforcement reports, records maintained by ATF as part of its function to regulate the firearms and ammunition industry, as well as conversations with manufacturers and/or other experts in the industry. I have also interviewed multiple individuals involved in firearms and drug trafficking, obtaining information regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances, resulting in prosecutions, convictions and the seizure of illegal drugs and weapons.

5. Prior to joining ATF, I was a sworn Police Officer in the State of Illinois from March 2011 to March 2020. I completed 12 Weeks (approximately 480 hours) of basic training at the Illinois State Police Academy from April 2011 to June 2011.

6. My most recent position was with the Bolingbrook Police Department in Bolingbrook, Illinois, where I was a Patrol Officer from December 2012 until March 2020. From July 2017 until March 2020, I also served as an Evidence Technician, assigned to Patrol.

7. During my career as a Police Officer, I attended approximately 520 hours of additional training in areas including evidence collection, interview/interrogation, arson and explosives, gang investigations, and drug investigations.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on the circumstances described below, there is probable cause to believe that on or about December 4, 2024, Dwight L. FARMER, born xx/xx/1977, has committed firearm and controlled substances offenses in the Eastern District of Wisconsin, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(8) (felon in possession of a firearm) and

2

924(c) (use of a firearm during drug trafficking), and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute controlled substances).

## DEFINITIONS

10. The following definitions apply to the Affidavit and Attachment B of this Affidavit:

   a. "Cellular telephone" or "cell phone" means a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may include geolocation information indicating where the cell phone was at particular times.

   b. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including writings and drawings), photographic form (including prints, negatives, videotapes, motion pictures, and photocopies), mechanical form

3

(including printing and typing) or electrical, electronic or magnetic form (including tape recordings, compact discs, electronic or magnetic storage devices such as hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, smart cards, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

4

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer

software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed

6

properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

11. The property to be searched is described as follows:

a. a black Apple iPhone seized from the person of Dwight L. Farmer on December 4, 2024, currently in the custody of the Lake Winnebago Metropolitan Enforcement Group (LWAM) in Neenah, WI.

**PROBABLE CAUSE**

12. In October and November 2024, a confidential informant ("CI") purchased cocaine from Dwight L. FARMER on two separate occasions. Both controlled buys occurred at FARMER's residence in the City of Neenah, Wisconsin. Additionally, communication between the CI and FARMER was through text messages and phone calls.

13. On December 4, 2024, agents executed a search warrant at FARMER's residence in Neenah, Wisconsin, which is located in the Eastern District of Wisconsin. There, the following relevant items were located:

a. a Ruger Model SR9 pistol bearing serial number 331-76842;

b. a Beretta Model APX pistol bearing serial number AXC051291;

c. a CBC Model 715T rifle bearing serial number EME3766529;

d. a CBC Model 715T short barreled rifle bearing serial number EM13902711;

e. a Pioneer Arms Corporation (PAC) Model Hellpup pistol bearing serial number

7

PAC1118477;

    f. approximately 747 rounds of ammunition;

    g. approximately 15.75 grams of cocaine in two separate bags (10.24 grams and 5.5 grams);

    h. approximately 180 grams of THC products;

    i. approximately 9.83 grams of psilocybin mushrooms; and

    j. drug paraphernalia, including digital scales.

14. The Ruger Model SR9 pistol was reported stolen out of Calumet County, Wisconsin. All five firearms were manufactured outside the state of Wisconsin and therefore traveled in interstate or foreign commerce prior to FARMER's possession of them. The suspected cocaine field tested positive for the presence of cocaine.

15. The cocaine and four of the firearms were located in a southeast bedroom of the basement in a room secured by a deadbolt. The CBC rifle and short-barreled rifled were on the floor in plain view, and the PAC Hellpup was located with 3 loaded magazines in a violin case. The Beretta pistol was located on a shelf under a table, and bulk ammunition was located in a dresser next to these three firearms. The cocaine was located nearby in desk drawers.

16. Based on my training and experience, I am aware that it is common for drug distributors to possess firearms to protect their drugs, cash, and themselves. Drug distributors commonly possess or display firearms during drug deals for these purposes. The CI told law enforcement that the first controlled buy with FARMER occurred in the southeast bedroom, and the CI reported seeing firearms in plain view.

17. I am also aware, based upon my training and experience and my conversations with

8

experienced drug investigators, that the amount of cocaine located in FARMER's residence is consistent with the intention of distributing it. The cocaine was located in two separate bags in a room where investigators also found digital scales. Further, FARMER distributed cocaine to a CI in the same room prior to the search warrant. Therefore, there is probable cause to believe that FARMER possessed the cocaine with the intention of distributing it.

18. FARMER was arrested, and agents located $1,349 cash and a black apple iPhone on his person. During a mirandized interview, FARMER admitted that he possessed the firearms for protection. He also admitted that he intended to use and distribute the cocaine found in the residence.

19. FARMER is a convicted felon and is therefore prohibited from possessing firearms.

20. Based on the weight of the drugs, the packaging, presence of packaging materials such (i.e. sandwich bags), the presence of a firearm, and a digital scale, it appears the narcotics were for distribution and not personal use.

21. Based on training and experience, your Affiant is familiar with certain behaviors and characteristics routinely associated with individuals involved in firearms and narcotics trafficking. For instance, your Affiant knows that firearms and narcotics traffickers often use electronic equipment, wireless and land line telephones, and pager to conduct firearms and narcotics trafficking operations. Your Affiant knows that firearms and narcotics traffickers often put their telephones in nominee names to distance themselves from telephones that are used to facilitate firearms trafficking. Your Affiant knows that firearms and narcotics traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control (e.g., their automobiles), firearms, ammunition, and documents

9

pertaining to such items. Regarding documents commonly under the dominion and control of firearms and narcotics traffickers, such as records concerning firearms transactions (e.g., receipts indicating transfer of ownership, firearm purchase paperwork [e.g. ATF Form 4473, a Wisconsin DOJ Handgun Transfer form], photographs, financial records), such records can be stored in many different forms, including paper and electronically.

22. Based on my training and experience, I know that individuals who traffic illegal drugs often rely on cellular phones and associated communication applications to communicate with their source(s) of supply, customers, and associates. Communications can entail calls, messages, and video chats to discuss quantity, timing, meet locations, delivery instructions, and other specifics regarding the transportation of the narcotics. Analysis of the cellular phone can help determine specifics of the narcotics trafficking including, but not limited to, specific communication platforms, co-conspirators, payment agreements, etc. Based on the above, I believe analysis of the devices described above will aid agents in their ongoing investigation into the distribution of controlled substances.

23. I am further aware that it is common for drug distributors and individuals who possess firearms to take photographs and videos of cash, controlled substances, and firearms. These photographs and videos can be located on a person's phone during a forensic analysis. Oftentimes, the photographs and videos can be located even if a user previously deleted them.

24. I am aware that individuals who possess phones commonly take photographs and videos of themselves ("selfies"), their friends and family members, and their surroundings. This evidence is relevant to prove that the suspect had possession and control of the seized device. In addition to photographs and videos, other data located on the phone can prove possession and control, including, but not limited to, IP addresses, GPS information, and social media

10

Case 1:24-mj-00702-JRS    Filed 12/05/24    Page 11 of 17    Document 1

information. It is common for suspects to deflect responsibility for incriminating content located on cellular devices. Locating evidence which proves ownership and control of the devices is essential. The evidence becomes even more relevant when agents can tie the device to a specific person for a lengthy period of time, which is highly relevant to that person's ownership and control of the device.

25. I also know that individuals who possess cellphones commonly navigate websites that are specific to them, including banking websites, employer websites, and other individualized websites or search terms. I am also aware that smartphones have applications that allow individuals to write notes or reminders, which are usually personalized. Additionally, I am aware that individuals who possess smartphones commonly send text messages to various individuals. Locating this information is highly relevant because it can tie a specific person to the seized device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my training and experience, I know that most cellular devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Furthermore, I know that cellphones can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

11

evidence of the crimes described in the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

28. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

29. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

30. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

31. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

32. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

12

33. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the device more particularly described in Attachment A, to seek the items described in Attachment B.

Respectfully Submitted,

BRADLEY KURTZWEIL
Digitally signed by BRADLEY KURTZWEIL
Date: 2024.12.05 15:18:23 -06'00'

BRADLEY KURTZWEIL
ATF Special Agent

Sworn to me telephonically on December ___, 2024.

HONORABLE JAMES R. SICKEL
United States Magistrate Judge

13

Case 1:24-mj-00702-JRS    Filed 12/05/24    Page 14 of 17    Document 1

## ATTACHMENT A

### Property to Be Searched

1. The property to be searched is described as follows:

    a. a black Apple iPhone seized from the person of Dwight L. Farmer on December 4, 2024, currently in the custody of the Lake Winnebago Metropolitan Enforcement Group (LWAM) in Neenah, WI.

2. This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1. All records, information, and items on the Devices described in Attachment A related to violations of Title 18, United States Code, Sections 922(g)(1), 924(c), and 924(a)(8), and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) involving Dwight FARMER, stored in the devices as of December 4, 2024, including:

   a. any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

   b. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   c. GPS information and any other location service data from the phone and/or from any downloaded applications;

   d. Internet search history and browser history related to firearms or location searches;

   e. call history;

   f. contact list, to include names, addresses, phone numbers, and/or email addresses;

   g. any video and/or photograph(s) on the phone related to firearms and/or controlled substances;

   h. any text messages exchanged or drafted that seem to relate to firearms, controlled substances, and/or other criminal activity;

   i. lists of customers and related identifying information;

   j. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

13

k. any information recording FARMER's schedule or travel; and

l. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.